
```
USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 10/16/09
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

REPRESENTACIONES Y DISTRIBUCIONES
ENYA S.A. DE C.V., ET AL.,

        Plaintiffs,

- against -

GLOBAL EXPLORER LLC, ET AL.,

        Defendants.

---

09 Civ. 6060 (JGK)

MEMORANDUM OPINION AND
ORDER

JOHN G. KOELTL, District Judge:

    The defendant, Steuart Investment Co. ("Steuart"), moves to vacate a maritime Order of Attachment and Garnishment ("Order of Attachment") issued by this Court pursuant to Rule B of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions of the Federal Rules of Civil Procedure in favor of the plaintiffs, Representaciones y Distribuciones Enya S.A. de C.V. and Instalaciones Electromecanicas, Civiles y Electricas, S.A. de C.V. ("plaintiffs"). Steuart moves to vacate the attachment pursuant to Supplemental Rule E(4)(f) of the Federal Rules of Civil Procedure, urging that the claims and damages against it are frivolous or inadequately pleaded, that the Court has no maritime jurisdiction over the case, that an Order of Attachment is unavailable when plaintiff is suing the defendant in another district, and that an attachment against various Steuart affiliates should be vacated.

I.

The following facts are undisputed, unless otherwise indicated.

Defendant Global Explorer LLC ("Global Explorer") was a Washington state corporation and the owner of the M/V Global Explorer ("the Vessel"). (Verified Am. Compl. ¶¶ 6-7.)

The plaintiffs were awarded a contract with PEMEX to perform pipeline maintenance work in the Gulf of Mexico. (Verified Am. Compl. ¶¶ 12-18.) On or about June 10, 2005, the plaintiffs and Global Explorer entered into a time charter of the Vessel ("the Charter"). (Verified Am. Compl. ¶ 19.) The Charter required Global Explorer to make various alterations to the Vessel, including increasing its berthing capacity among other alterations, so that the Vessel could be used to fulfill the PEMEX contract. (Verified Am. Compl. ¶ 25.) The plaintiffs allege that these alterations were never made. (Verified Am. Compl. ¶¶ 25-36.)

On or about May 13, 2006, the captain of the Vessel suspended diving operations, alleging that the plaintiffs did not have a copy of the necessary Diving Procedures. (Verified Am. Compl. ¶ 37.) Global Explorer continued to invoice the

plaintiffs and the Charter was terminated when the plaintiffs failed to pay the Charter hire. (Verified Am. Compl. ¶¶ 40-42.)

On or about September 26, 2006, Global Explorer transferred ownership of the Vessel to Global Enterprises LLC ("Global Enterprises"), also a Washington state corporation. (Verified Am. Compl. ¶¶ 8-9.) Global Explorer was officially dissolved on October 23, 2007. (Verified Am. Compl. ¶ 58.) The ownership interests in both Global Explorer and Global Enterprises were owned by Steuart, a corporation organized under the laws of Delaware with a principal place of business in Maryland. (Verified Am. Compl. ¶¶ 11, 58-59.)

On July 2, 2009, the plaintiffs filed a complaint in this Court alleging various claims against Global Explorer, Global Enterprises, and Steuart Investment Co. and requesting an Order of Attachment. The original complaint alleged that Global Enterprise is the successor of Global Explorer, and that Steuart is the alter ego of both Global Explorer and Global Enterprises. (Verified Compl. ¶¶ 58, 68.) The complaint alleged that Steuart "is the alter-ego of Global Explorer and Global Enterprises because as the beneficial owner (member) of both Global Explorer and Global Enterprises, Steuart Investment Co. facilitated the fraudulent transfer of the Vessel . . . ." (Verified Compl. ¶ 68.) Because Global Enterprises is registered with the New York Department of State and may be served by serving process upon

3

the Secretary of State in Albany, this Court determined that Global Enterprises can be found for purposes of Rule B in this district or a convenient adjacent district and therefore that a Rule B Order of Attachment would be inappropriate against Global Enterprises.  See Representaciones y Distribuciones EVYA, S.A. de C.V. v. Global Explorer LLC, No. 09 Civ. 6060, 2009 WL 2031858, at *1 (S.D.N.Y. July 9, 2009).  Because Steuart was alleged to be an alter ego of Global Enterprises, this Court similarly denied the Order of Attachment against Steuart.  See id.  With Global Enterprises and Steuart struck from the proposed Attachment, this Court granted the Order of Attachment against Global Explorer.

The plaintiffs' Verified Amended Complaint, filed on August 11, 2009, dropped Global Enterprises as a defendant and deleted any assertion of alter ego liability against Steuart.  The Verified Amended Complaint asserts various claims against Global Explorer, including fraud and breach of the maritime charter against Global Explorer, and a claim against Steuart for fraudulent winding up under Washington law of the business of Global Explorer and for veil piercing liability based on the alleged fraudulent winding up.  (Verified Am. Compl. ¶¶ 22-55, 56-74.)

Steuart now moves to vacate the Order of Attachment on various grounds, including that the claims and damages against

4

it are frivolous or inadequately pleaded, that the Court has no maritime jurisdiction over it, that an Order of Attachment is unavailable when the plaintiffs are also suing the defendant in another district, and that an attachment against various Steuart affiliates should be vacated.

## II.

Once a court issues a maritime attachment order pursuant to Supplemental Rule B, "any person claiming an interest" in the property is entitled to a hearing, at which point the burden is on the plaintiff to show "why the . . . attachment should not be vacated . . . ." Fed. R. Civ. P. Supp. R. E(4)(f). The plaintiff must show it has fulfilled the requirements of Rules B and E, including that it has a "valid prima facie admiralty claim against the defendant" that will support admiralty jurisdiction under 28 U.S.C. § 1333. Aqua Stoli Shipping Ltd. v. Gardner Smith Pty Ltd., 460 F.3d 434, 445 (2d Cir. 2006); see also Winter Storm Shipping, Ltd. v. TPI, 310 F.3d 263, 268 (2d Cir. 2002); Great Eastern Shipping Co. v. Binani Cement Ltd., No. 09 Civ. 6141, 2009 WL 2981964, at *2 (S.D.N.Y. Sept. 17, 2009). The plaintiffs must also show that the defendants "cannot be found within the district," that the defendants have property within the district, and that there is no additional

statutory or maritime bar to a Supplemental Rule B attachment. Aqua Stoli, 460 F.3d at 445.

Admiralty jurisdiction is defined by the purpose of the jurisdictional grant. See Ins. Co. v. Dunham, 78 U.S. (11 Wall.) 1, 24 (1870). "[T]he fundamental interest giving rise to maritime jurisdiction is the protection of maritime commerce." Exxon Corp. v. Cent. Gulf Lines, Inc., 500 U.S. 603, 608 (1991) (internal citation omitted). Thus, in contract cases such as this one, district courts should make a case-by-case examination of "the subject matter of the . . . contract and determine whether the services performed under the contract are maritime in nature." Id. at 612; see also Norfolk S. Ry. Co. v. Kirby, 543 U.S. 14, 24 (2004); Williamson v. Recovery Ltd. P'ship, 542 F.3d 43, 49 (2d Cir. 2008) ("As the district court correctly found, the contracts at issue here 'were by their terms entered into in connection with [a] maritime commercial venture and are therefore maritime in nature.'"). The decision turns on whether the contract has "reference to maritime service or maritime transactions." Norfolk S. Ry., 543 U.S. at 24; see also Great Eastern Shipping, 2009 WL 2981964, at *2.

In this case, the claim against Steuart is not a maritime claim. The plaintiffs themselves state that they are not asserting an alter ego claim against Steuart in this Court, but rather an independent claim under Washington state law for the

6

improper winding up of Global Explorer. See Wash. Rev. Code § 25.15.300; see also Chadwick Farms Owners Ass'n v. FHC LLC, 207 P.3d 1251, 1263 (Wash. 2009) ("[P]ersonal liability to claimants may result if the persons winding up the company's affairs do not comply with RCW 25.15.300."). A claim for improper winding up is not a maritime claim any more than a guarantee of payment claim is a maritime claim. See C. Transp. Panamax, Ltd. v. Kremikovtzi Trade E. O.O.D., No. 07 Civ. 893, 2008 WL 2546180, at *2 (S.D.N.Y. June 19, 2008) ("agreement to guarantee the performance of a maritime contract" is maritime in nature but an "agreement to act as a surety on a maritime contract" is not); see also Fednav, Ltd. v. Isoramar, S.A., 925 F.2d 599, 601 (2d Cir. 1991) ("[M]erely agreeing as surety to pay damages for another's breach of a maritime charter is not a maritime contract.") (internal quotation marks omitted). This is the case because a guarantee of performance requires the promisor to perform the very act that is the basis of the maritime contract. See C. Trans. Panamax, 2008 WL 2546180, at *2. The direct subject matter of a suit regarding a guarantee of payment or a guarantee to pay damages "neither involves maritime service nor maritime transactions." Fednav, 925 F.2d at 600. While the underlying charter party may be maritime in nature, the subject matter of the original contract is not relevant to the question

of whether a guarantee of payment or a state statutory basis for the payment of damages is maritime in nature. See id. at 602.

In the present case, a claim for improper winding up of a corporation is similarly not maritime in nature. The direct subject matter of a claim for improper winding up is the sufficiency of the actions taken by the corporate officers in charge of the winding up. It is not relevant that Global Explorer, the corporation that was allegedly improperly wound-up, was a party to maritime contracts. The issue in the claims against Steuart is whether Steuart followed the proper winding up procedures for Global Explorer. This is not a maritime issue.

The doctrine of "piercing the corporate veil" applies in maritime law. See Williamson v. Recovery Ltd. P'ship, 542 F.3d 43, 53 (2d Cir. 2008). The Court of Appeals for the Second Circuit has recognized two ways to pierce the corporate veil—fraud and alter ego liability: "The prerequisites for piercing a corporate veil are as clear in federal maritime law as in shoreside law: [The individual] must have used [the corporate entity] to perpetrate a fraud or have so dominated and disregarded [the corporate entity]'s corporate form that [the corporate entity] primarily transacted [the individual]'s personal business rather than its own corporate business." Id. Veil piercing is a means to hold a second person or entity

responsible for the maritime tort or breach of contract of another entity. See Pink Goose (Cayman) Ltd. v. Sunway Traders LLC, 08 Civ. 2351, 2008 WL 4619880, at *2 (S.D.N.Y. Oct. 17, 2008); Wajilam Exps. (Singapore) Pte. Ltd. v. ATL Shipping Ltd., 475 F. Supp. 2d 275, 282-83 (S.D.N.Y. 2006).

In this case, the plaintiff alleges that Steuart is liable under the fraud aspect of veil piercing because Steuart directed or coordinated the sale of the Vessel by Global Explorer to Global Enterprises, and this transfer was fraudulent as applied to the plaintiffs. (Verified Am. Compl. ¶¶ 67-68.)[1] However, these allegations are directed at alleged fraud in the winding up of Global Explorer rather than its performance or breach of the maritime contract. Fraud in the winding up is as removed from the underlying maritime claim as a guarantee of payment for a maritime claim. Fraud in the winding up of Global Explorer is at least one step removed from the maritime claim for breach of the charter party. Therefore, the attachment against Steuart must be vacated.

The plaintiffs do assert a maritime claim for the breach of the charter party, but it is against Global Explorer and not Steuart. The attachment stands with respect to Global Explorer.

---

[1] The complaint also alleges half-heartedly that Steuart's actions have "run afoul of the fraud aspect of veil piercing consideration and likely the domination and control aspect as well." (Verified Am. Compl. ¶ 68.) However, there are insufficient particular allegations that Steuart was the alter ego of Global Explorer with respect to the maritime claims to survive the motion to vacate the attachment. See Williamson, 542 F.3d at 53.

9

It is unnecessary to reach Steuart's various alternative grounds for vacating the attachment.

## CONCLUSION

The defendant Steuart's motion to vacate the Supplemental Rule B attachment against Steuart is **granted**. The Clerk is directed to close Docket No. 16.

**SO ORDERED.**

Dated:     New York, New York
           October 15, 2009

_____
John G. Koeltl
United States District Judge